IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

———————————————————————

GARTNER, INC.,

                                 Plaintiff,

      vs.                                           Civil No. 23-cv-00642

INFO-TECH RESEARCH GROUP, INC., a Delaware
Corporation, and ALIA MENDONSA, an individual,

                                 Defendants.

———————————————————————


# DEFENDANTS' MEMORANDUM OF LAW:
## (1) IN OPPOSITION TO PLAINTIFF'S REQUEST
## FOR A TRO AND PRELIMINARY INJUNCTION; AND (2) IN
## SUPPORT OF MS. MENDONSA'S MOTION TO TRANSFER; AND
## (3) DEFENDANTS' MOTION FOR JUDGMENT

Respectfully submitted,

By:  s/Edmund J. Ferdinand, III
Edmund J. Ferdinand, III ct21287
Ferdinand IP, LLC
1221 Post Road East, Suite 205
Westport, CT  06880
Telephone:  (203) 557-4224
Email:  Jferdinand@FIPLawGroup.com


Jodyann Galvin ct24599
*Pro Hac Vice*
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
Telephone:  (716) 856-4000
Email:  Jgalvin@hodgsonruss.com

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ......................................................................................7

ARGUMENT ...........................................................................................................7

I.        THIS COURT SHOULD TRANSFER
          THE CASE TO CALIFORNIA, OR
          IN THE ALTERNATIVE,
          CALIFORNIA LAW SHOULD APPLY ........................................................7

          A      Transfer Of All Claims Against Ms. Mendonsa Is Warranted ...............7

          B      Even If This Court Declines To
                 Transfer It Should Apply California Law ............................................12

          C      Judgment Should Be Granted In Defendants' Favor
                 And The Noncompete Claims Should Be Dismissed ...........................17

II.       THE COURT SHOULD DENY THE TRO
          AND PRELIMINARY INJUNCTION REQUEST
          BECAUSE GARTNER HAS FAILED
          TO MEET ITS BURDEN ON ITS
          BREACH OF CONTRACT CLAIM .......................................................18

          A      Gartner Cannot Establish Likelihood Of Success..............................19

          B      The Noncompete Covenant Is Unreasonable......................................20

          C      Mendonsa Did Not Solicit Any Gartner Clients And Has
                 Not Breached Any Non-Solicit Obligation To Gartner .......................26

          D      Gartner Cannot Rely On The "Sufficiently Serious
                 Questions Going To The Merits" Test Because A
                 Balancing Of The Hardships Tip Decidedly Against It.......................27

          E      Gartner Cannot Show Immediate And Irreparable Harm. ...................27

          F      A Temporary Restraining Order Is Not In The Public Interest. ...........28

i

## TABLE OF CONTENTS - cont'd

PAGE

III.    THE COURT SHOULD DENY THE TRO
        REQUEST BECAUSE GARTNER HAS
        FAILED TO MEET ITS BURDEN ON ITS
        MISAPPROPRIATION CLAIM ............................................................................29

        A    Gartner Failed To Demonstrate Its Likelihood Of
             Success On The Merits Of Misappropriation Claim................................................29

        B    Gartner Cannot Show Immediate And Irreparable Harm. ....................................32

CONCLUSION......................................................................................................................33

## **TABLE OF AUTHORITIES**

PAGE

**Cases**

*AM Medica Communications Group v. Kilgallen*,
    90 Fed.Appx. 10 (2d Cir. 2003) ................................................................................23

*Amphenol Corp. v. Factory MVP. Ins. Co.*,
    2023 WL 3057146 (D. Conn. Apr. 24, 2023) ..........................................................17

*Burnette v. Carothers*,
    192 F. 3d 52 (2d Cir. 1999) ......................................................................................17

*Citibank, N.A. v. Morgan Stanley & Co. Int'l*,
    724 F. Supp. 2d 398 (S.D.N.Y. 2010) ......................................................................17

*Control Sys., Inc. v. Realized Sols., Inc.*,
    No. 3:11CV1423 PCD, 2011 WL 4433750 (D. Conn. Sept. 22, 2011) ...................32

*Creative Dimensions, Inc. v. Laberge*,
    2012 WL 2548717 (Conn. Super. Ct. May 31, 2012) ..............................................22

*Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*,
    759 F.2d 1053 (2d Cir. 1985) ...................................................................................30

*DS Parent, Inc. v. Teich*,
    2014 WL 546358 (N.D.N.Y. Feb. 10, 2014) ...........................................................23

*EarthWeb, Inc. v. Schlack*,
    71 F.Supp.2d 299 (S.D.N.Y. 1999) .....................................................................30, 31

*Edwards v. Arthur Andersen LLP*,
    44 Cal.4th 937 (Cal. 2008) .......................................................................................15

*Gatan, Inc. v. Nion Co*,
    No. 15-cv-1862-PJH, 2016 WL 1243477 (N.D. Cal. Mar. 30, 2016) .....................15

*Genasys Inc. v. Vector Acoustics, LLC*,
    No. 22-CV-152 TWR (BLM), 2022 WL 16577872 (S.D. Cal. Nov. 1, 2022) .....13, 15

*General Elec. Co. v. Lighting Sci. Grp. Corp.*,
    No. 19cv5365, 2019 WL 3451128 (S.D.N.Y. Jul. 31, 2019) .....................................8

*Giro, Inc. v. Malaysian Airline Sys. Berhad*,
    No. 10 Civ. 5550(JGK), 2011 WL 2183171 (S.D.N.Y. June 3, 2011) .......................8

iii

## TABLE OF AUTHORITIES - cont'd

PAGE

*Heyman v. AR. Winarick, Inc.*,
   325 F.2d 584 (2d Cir. 1963)...............................................................30

*International Paper Co. v. Suwyn*,
   966 F.Supp. 246 (S.D.N.Y. 1997)......................................................23

*Kai Wu Lu v. Tong Zheng Lu*,
   No. CV-04-1097 (CBA), 2007 WL 9723258 (E.D.N.Y. Jul. 12, 2007)....................9

*Leasing Serv. Corp. v. Patterson Enters., Ltd.*,
   633 F.Supp. 282 (S.D.N.Y. 1986).........................................................9

*Mason v. Amtrust Financial Services, Inc.*,
   848 Fed.Appx. 447 (2d Cir. 2021)........................................................30

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal.App.4th 853 (Cal. Ct. App. 1994) ...........................................15

*MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*,
   442 F.Supp.3d 738 (S.D.N.Y. 2020)......................................................8

*Next Communications, Inc. v. Viber Media, Inc.*,
   758 Fed.Appx. 46 (2d Cir. 2018)........................................................29

*NGC Worldwide, Inc. v. Siamon*,
   No. 3:02CV1760 (JBA), 2003 WL 1987001 (D. Conn. Apr. 21, 2003)...........9, 11

*North Amer. Soccer League, LLC v. U.S. Soccer Fed. Inc.*,
   883 F.3d 32 (2d Cir. 2018)................................................................27

*Oneida Nation of New York v. Cuomo*,
   645 F.3d 154 (2d Cir. 2011)...............................................................18

*Onward Search LLC v. Noble*,
   No. 3:22-cv-00369 (VAB), 2022 WL 2669520 (D. Conn. July 11, 2022)...........24

*Patel v. Searles*,
   305 F. 3d 130 (2d Cir. 2002)..............................................................17

*PepsiCo, Inc. v. Redmond*,
   54 F.3d 1262 (7th Cir. 1995) .............................................................30

**TABLE OF AUTHORITIES - cont'd**

PAGE

*PepsiCo, Inc. v. U.S. S.E.C.*,
   563 F.Supp. 828 (S.D.N.Y. 1983)............................................................31

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d. Cir. 1989)...............................................................13

*Rush v. Hillside Buffalo, LLC*,
   314 F. Supp. 3d 477 (W.D.N.Y. 2018)............................................27, 32

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010)................................................................18

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015)........................................................18, 26

*Sewell v. Bernardin*,
   795 F.3d 337 (2d Cir. 2015)..............................................................17

*Smart Team Global LLC v. Humble Tech LLC*,
   2022 WL 847301 (S.D. N.Y. Feb. 18, 2022)........................................29

*Sunbelt Rentals, Inc. v. McAndrews*,
   552 F. Supp. 3d 319 (D. Conn. 2021)........................................ passim

*Sylvan R. Shemitz Designs, Inc. v. Brown*,
   No. AANCV136013145S, 2013 WL 6038263 (Conn. Super. Ct. Oct. 23,
   2013) .........................................................................20, 22, 24, 27

*Syntel Sterling Best Shores Mauritius Lmtd. V. The TriZetto Group, Inc.*,
   2023 WL 3636674 (2d Cir. May 25, 2023) ..........................................29

*United Rentals, Inc. v. Pruett*,
   296 F.Supp. 2d 220 (D. Conn. 2003)................................10, 11, 13, 14

*Veramark Technologies, Inc. v. Bouk*,
   10 F.Supp.3d 395 (W.D.N.Y. Apr. 2, 2014)..........................................22

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015)..................................................17

**Statutes**

18 U.S.C. § 1836.................................................................................30

## TABLE OF AUTHORITIES - cont'd

PAGE

18 U.S.C. § 1839(6) ..................................................................................................29

28 U.S.C. §§ 1391(b)(1) ...............................................................................................9

28 U.S.C. § 1404(a) .........................................................................................9, 10, 11

Cal. Bus. & Prof. Code § 16600 ...............................................................................13, 15

**Introduction**

Defendants Info-Tech Research Group Inc. and Alia Mendonsa submit this memorandum in opposition to Plaintiff Gartner, Inc.'s motion for a temporary restraining order and preliminary injunction.  Defendants respectfully seek from this Court:  (1) transfer of the claims against Ms. Mendonsa to the Central District of California; and/or (2) judgment in their favor on all noncompete claims (Counts I and II) because noncompetes are barred in California, where Ms. Mendonsa resides.  Defendants submit this memorandum without waiving any defenses.  Also in support of the relief requested, Defendants submit two declarations of Alia Mendonsa (one public, one that has been requested to file under seal), and the declaration of Hannes Scheidegger.

**Preliminary Statement**

Gartner comes to this Court exclaiming that it is suffering irreparable harm due to the departure of a mid-level analyst, one of over two thousand, to work for a substantially smaller competitor, Info-Tech.  Gartner claims that Ms. Mendonsa, an employee that it just recently passed over for a promotion, is so key to its success that allowing her to work for her current employer Info-Tech will do untold damage to its $5 billion, publicly-traded business. The allegations are not credible.

Gartner makes no legitimate attempt to show that any restriction on Ms. Mendonsa's ability to work is reasonable and necessary to protect its interests.  Gartner identifies no client that has been lost due to Ms. Mendonsa's employment with Info-Tech.  Gartner identifies no actual trade secret or confidential information Ms. Mendonsa took and disclosed to Info-Tech or anyone else.  And Gartner can offer no evidence of any scheme by Info-Tech to

obtain allegedly confidential or trade secret information that belongs to Gartner.  All allegations related to that are factually unsupported (and discovery will not help).  The record shows that none of Gartner's allegations are correct, and it also shows that Gartner has omitted material and relevant facts which favor Defendants.

Gartner bases its claim for injunctive relief on two claims in its complaint:  breach of the "Agreement Regarding Certain Conditions of Employment (California Employees)" between Gartner and Ms. Mendonsa (the "Gartner Agreement"); and (2) misappropriation of trade secrets by Ms. Mendonsa and Info-Tech.

Gartner's attempted enforcement of a noncompete clause against Ms. Mendonsa, particularly with a claim of entitlement to expedited relief, is perplexing and should be regarded by this Court with intense scrutiny.  The Gartner Agreement states at the very top that ***it is specifically for California employees***, which Ms. Mendonsa was while working at Gartner since 2007 for all but a short period.  The Gartner Agreement also provides that ***it will not be enforceable against California employees***.

Ms. Mendonsa is a California resident, and this is where claims against her should be heard and the law that should be applied.  Gartner treated her, and continues to treat her, as a California resident.  Yet Gartner's complaint and motion papers contain nary a whisper of California – or its ban on noncompete restrictions for employees.  Gartner's failure to acknowledge upfront in its opening papers its own admissions regarding her California residence is an attempted concealment of a material fact from this Court.  Gartner knew that this would be an issue on its motion for extraordinary relief given the express language of the Gartner

2

Agreement, and yet Gartner did not raise it with this Court.  This alone warrants denial of a TRO and preliminary injunction.  Gartner's own human resources records (which are uniquely within Gartner's possession) will show that Ms. Mendonsa is a California resident.  For example, Gartner has, within the last several weeks, mailed legally-required documents that relate to her separation from Gartner (COBRA and benefits) to Ms. Mendonsa in California, where she received them.  Nevertheless, Gartner baldly alleges that Ms. Mendonsa is a resident of Arizona. And though Gartner already knew Ms. Mendonsa was a California resident, it was confirmed in writing by Info-Tech's counsel *the day before Gartner filed its complaint*.  Ms. Mendonsa did live in Arizona for about two years from November 2020 to January 2023, but she relocated back to her home state of California effective January 1, 2023.  Before doing so, she talked to her Gartner supervisors about it, obtained Gartner's consent to move, and changed her address in Gartner's system, which was accepted and processed by Gartner.[1]

California law and public policy stands so firmly in favor of a free market for labor and protecting its residents' unfettered ability to engage in their chosen professions that it long ago statutorily banned non-compete restrictions and currently is proposing to punish employers and attorneys who seek to enforce them anyway.  Instead of granting any relief to Gartner on its motion, this Court should instead enter judgment against it on the pleadings based

---

[1]    Gartner may argue that Ms. Mendonsa worked out of Arizona a good amount in early 2023 after relocating back to her home state.  This is of no consequence, to the extent it is even correct, which Ms. Mendonsa addresses squarely in her declaration.  A California resident is most certainly able to travel outside of California as Ms. Mendonsa did for personal and medical reasons.  Further, when Gartner attempted to serve its summons and complaint upon Ms. Mendonsa in Arizona (after her counsel had already agreed to accept service), the process server was told that Ms. Mendonsa lives in California.

on Federal Rule of Civil Procedure 12(c) and dismiss any claims relating to breach of the Gartner Agreement by Ms. Mendonsa or inducement of a breach of noncompete obligations by Info-Tech.  In addition, Ms. Mendonsa's health concerns, as well as the locus of the central events and location of witnesses, warrant transfer of the claims against Ms. Mendonsa to California.

But even if this Court were to hold that California law does not apply to bar the enforcement of Gartner's noncompete clause, and does not transfer this matter, Gartner still cannot demonstrate that it is entitled to either a TRO or a preliminary injunction.  As set forth in detail in this memorandum, noncompete clauses exactly like the one here are under assault.  The tidal wave of striking them down, except for the most unique and high-level employees which Ms. Mendonsa is not, is surging in the federal government and across the states on an individual basis.  The facts here perfectly demonstrate the reasons why anti-competitive contracts are disfavored.  Employees like Ms. Mendonsa should be free to pursue work without any such restrictions, especially where her new position is materially different from her position at Gartner.  The one-year restriction here, which spans several states, is overbroad, unreasonable, and unnecessary to protect any claimed interests of Gartner.  The equities strongly favor Ms. Mendonsa being able to continue working at the employer of her choice and favor Info-Tech continuing to build its business fairly and hire workers who wish to work for it, even if they have previously worked for Gartner.

Info-Tech did not unlawfully induce Ms. Mendonsa away from Gartner or endeavor to steal its secrets.  To the contrary, Info-Tech told Ms. Mendonsa that it was important not to bring any confidential information belonging to Gartner with her.  Info-Tech regarded this as so important that it required Ms. Mendonsa to sign a certification acknowledging that. Info-

4

Tech advised Gartner that it did not want any Gartner confidential information when Gartner sent a letter dated May 5, 2023 voicing its concerns.

Further, there is no breach of a non-solicit obligation at all, and certainly not one that would necessitate injunctive relief against either Ms. Mendonsa or Info-Tech. Gartner identified one instance where Ms. Mendonsa appeared on a video meeting with a customer it identifies as a Gartner customer and alleges she was soliciting the customer. Perhaps not surprisingly, Gartner does not offer any statement from the actual customer in support of its allegations of Ms. Mendonsa's "efforts to sway" this customer. That is likely because the customer had already committed to have a business relationship with Info-Tech before Ms. Mendonsa even joined Info-Tech. That is also because Ms. Mendonsa actually did not contribute substantively to the meeting nor could she — she had been working at Info-Tech for two days and attended the call as part of her training. Even though this did not come close to solicitation, Ms. Mendonsa talked to her supervisor immediately after the video meeting and said she should probably not work with this client. Her supervisor agreed.

To the extent Gartner bases this application on alleged misappropriation of trade secrets or confidential information, its complaint fails entirely to identify the purported trade secrets or confidential information and most definitely has not alleged that anything was disclosed or used. It is simply not enough that a former employee have access to confidential information. ***There has to be actual disclosure or use without consent.*** Even assuming there was confidential information at issue here (which Defendants sharply dispute), there is no disclosure or use here, either by Ms. Mendonsa or by Info-Tech. Gartner relies on speculation and surmise about one instance – where Ms. Mendonsa emailed to herself a document that she

5

authored.  Ms. Mendonsa retained copies of many publications she authored as a matter of course, and that was not prohibited by Gartner.  Moreover, following Gartner's written employee exit instructions, she deleted the complained-of-publication along with hundreds of other documents.  This will plainly be shown in Gartner's IT systems.  Before Ms. Mendonsa deleted the one document that Gartner relies on in its complaint, it was not shared with anyone, including Info-Tech.[2]

Finally, Gartner says that Ms. Mendonsa's departure email to her colleagues was not truthful.  Gartner casts it as an alleged deception by Ms. Mendonsa, despite that it has no legal significance.  But Gartner omitted from this application Ms. Mendonsa's ***actual*** resignation email to her supervisors which cited her health conditions and need to find a better work-life balance to support her dependent children.  Rather than finding a good work-life balance at Gartner, what she found there in 2023 was a recent mediocre performance evaluation, being passed over for a promotion, and delayed for another.[3]

Gartner's so-called emergency is a waste of time of this Court's resources and appears calculated to punish Ms. Mendonsa and drag its competitor Info-Tech into court on

---

[2]    Info-Tech notified Gartner that there was one document that Ms. Mendonsa emailed to three Info-Tech employees.  As described in detail in Ms. Mendonsa's declaration, it was a document she created by copying, verbatim, information on public websites.  There was no analysis, strategy, or use of any Gartner proprietary research methodology.  In any event, as detailed in Mr. Scheidegger's declaration, that document was isolated by Info-Tech and is no longer accessible to any businessperson at Info-Tech.

[3]    Ms. Mendonsa does not contest that Mr. diMaio counseled her about ways that she might be able to remain at Gartner, but ultimately she decided she had to move on.  Her actual resignation email — which Gartner omitted — makes clear that she had to prioritize her health and family, despite efforts Gartner may have made.

trumped-up and baseless claims of a scheme of subterfuge and corporate espionage rather than enforcing legitimate rights or bringing forward legitimate claims.  Defendants urge that this Court transfer the claims against Ms. Mendonsa (and Info-Tech, if the Court so decides) to California, or, in the alternative: (1) apply California law and enter judgment in Defendants' favor on all noncompete-related claims; and (2) deny Gartner's motion for a TRO and preliminary injunction in its entirety.

### Statement of Facts

The relevant factual background is set forth in the declaration of Alia Mendonsa, sworn to June 5, 2023 ("Mendonsa Decl."), the sealed declaration of Alia Mendonsa, sworn to June 4, 2023 (the "Second Mendonsa Decl."), and the declaration of Hannes Scheidegger, sworn to June 5, 2023 ("Scheidegger Decl.").

### Argument

I.    **THIS COURT SHOULD TRANSFER THE CASE TO CALIFORNIA, OR IN THE ALTERNATIVE, CALIFORNIA LAW SHOULD APPLY**

A    **Transfer of All Claims Against Ms. Mendonsa Is Warranted**

The Gartner Agreement from 2007 contains a plainly permissive forum selection clause of Connecticut, despite having a title and specific provision related to California employees, which Ms. Mendonsa was.  The selection of Connecticut should not be enforced by this Court, and the claims against Ms. Mendonsa should be transferred to the District of California.

7

The enforceability of a forum selection clause is governed by federal law. *General Elec. Co. v. Lighting Sci. Grp. Corp.*, No. 19cv5365, 2019 WL 3451128, at *2 (S.D.N.Y. Jul. 31, 2019).  To determine whether the forum selection clause is enforceable, courts ask:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., — whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  A party can overcome this presumption by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Id.*; *see also MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F.Supp.3d 738, 747 (S.D.N.Y. 2020).

Ms. Mendonsa does not contest that the clause was reasonably communicated to her or that the claims and she are not subject to the forum selection clause.  But the forum selection clause in the Gartner Agreement is plainly permissive and therefore does not enjoy the presumption of enforceability.  Ms. Mendonsa consented to jurisdiction in Connecticut, but she did not (contrary to the allegation of the Complaint ¶ 14) consent to the *exclusive* jurisdiction of Connecticut courts, nor did she agree to waive all challenges to the suitability of the forum.  *See Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 Civ. 5550(JGK), 2011 WL 2183171, at *4 (S.D.N.Y. June 3, 2011) (explaining that a permissive forum selection clause reflects only the parties' consent to a designated forum, not a requirement that disputes be resolved in that forum).

8

The permissive nature of the forum selection clause does not void it, but it does allow for a traditional *forum non conveniens* challenge under 28 U.S.C. § 1404(a).  Unlike a mandatory forum selection clause, which waives the § 1404 analysis, a permissive forum selection clause does not prevent a court from considering and ordering a transfer of venue pursuant to § 1404(a).  *Leasing Serv. Corp. v. Patterson Enters., Ltd.*, 633 F.Supp. 282, 284 (S.D.N.Y. 1986).  "The purpose of § 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *NGC Worldwide, Inc. v. Siamon*, No. 3:02CV1760 (JBA), 2003 WL 1987001, at *1 (D. Conn. Apr. 21, 2003) (citation omitted).  "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  *Id*. (quotations and citation omitted; brackets in original).

The two-part analysis under § 1404(a) requires a court to ask whether the case could have been properly filed in the proposed transferee district, and if so whether a mix of private and public factors related to "the convenience of the parties and the witnesses and the interests of justice" warrant transfer.  *Id.* at *11.  *Kai Wu Lu v. Tong Zheng Lu*, No. CV-04-1097 (CBA), 2007 WL 9723258, at *3 (E.D.N.Y. Jul. 12, 2007).  Here, the answer to both of these questions is yes.

### 1.    This matter could have been brought in California

Because Ms. Mendonsa is a resident of California and a substantial part of the events or omissions giving rise to the claims occurred there, this case could have brought against Ms. Mendonsa in the California district in which she resides under 28 U.S.C. §§ 1391(b)(1) (providing venue where a defendant resides if all defendants are residents of that state),

1391(b)(2) (providing venue where a substantial part of events giving rise to the claim occurred) and 1391(c)(2) (providing that a corporate entity is deemed to reside in any district in which it is subject to personal jurisdiction).

### 2. The convenience of the parties and witnesses and the interests of justice favor California

In *United Rentals, Inc. v. Pruett*, 296 F.Supp. 2d 220 (D. Conn. 2003), plaintiff, a Delaware corporation with headquarters in Connecticut, sued a branch manager of one of its California offices, to enforce the employee's non-compete agreement. The case was brought in this Court, the District of Connecticut. The employee agreed to Connecticut's exclusive jurisdiction and choice of law in the employment agreement. This Court transferred the case under 28 U.S.C. § 1404(a), even though the forum selection clause was enforceable. With respect to "the convenience of the parties" factor, the court gave great weight to the defendant's California residence and to an affidavit from his attorney identifying numerous witnesses in California that he intended to call, including non-party witnesses. *Id.* at 228-229. With respect to the "interests of justice," the court concluded that because California law should apply to breach of contract claim, this factor also favored transfer. *Id.* at 230 ("It is in the interest of justice for a court with the most familiarity with the applicable state law to hear this case."). Finally, despite finding the forum selection clause to be valid, the court concluded that it "should not be given overriding weight, particularly since it was drafted solely by United with no input from Pruett to be as advantageous as possible to United's own interest… Given the lack of mutuality of interest and the one-sided nature of the Employment Agreement, the parties' contractual choice of forum is outweighed by the powerful convenience and fairness factors suggesting California as the appropriate forum." *Id.* at 233-34.

10

All of the factors that weighed in favor of transfer in *United Rentals* also weigh in favor of transfer here. Ms. Mendonsa, currently resides in California, and did so for all but two of her seventeen years of employment with Gartner. Her supervisor works and resides in California. The alleged misappropriation occurred in California. Ms. Mendonsa signed the Gartner agreement in California. Simply, the locus of all relevant events here is California, as is the location of the defendant and witnesses. Ms. Mendonsa resides in California, her Info-Tech supervisor is in California, and her Gartner supervisor is in California. Gartner has a significant-presence in California. The Gartner Agreement itself is tailored to California employees. The Gartner Agreement, like the one in *Pruett*, was one-sided in favor of Gartner alone.

In addition, in applying these forum *non conveniens* principles, "[t]he health concerns of a party or witness can be an important factor in the determination of whether a § 1404(a) transfer is proper." *NGC Worldwide, Inc.*, 2003 WL 1987001, at *2 (citation omitted). In *NCG*, this Court used its discretion to grant a motion to transfer venue from the District of Connecticut to the Central District of California on the basis of the defendant's serious health conditions that made extended travel from his home in California to Connecticut for discovery and trial detrimental to his health. Specifically, the defendant suffered from Type 2 Diabetes Mellitus, which causes severe pain and swelling in the extremities as a result of extended periods of sitting, as well as minor tearing and bleeding of the skin. *Id*. at *1. The Court balanced the detrimental effects on defendant's health that would result from his being forced to travel across country to defend this case, against the weight accorded to plaintiff's Connecticut choice of forum, and found that "the interests of justice militate in favor of a transfer of venue pursuant to § 1404(a)." *Id*. at *2.

11

The Court should find the same here.  As set forth in her accompanying Second Declaration, Ms. Mendonsa suffers from serious medical conditions that would preclude her from being able to travel from her residence in California to Connecticut to defend this case. Such conditions severely limit her ability to carry out anything other than the most basic activities of daily living.[4]  In addition, she occupies an important caregiving role within her family for which traveling that distance would create a significant burden.  In contrast, Gartner's sole interest is in having its permissive choice of venue clause enforced.  In light of Ms. Mendonsa's serious health limitations and family obligations, the interests of justice here strongly favor transfer of venue of the claims against Ms. Mendonsa to the Central District of California.

**B      Even If This Court Declines To
        Transfer It Should Apply California Law**

While transfer is most appropriate given all of the factors before the Court and the fact that the locus of the allegations occurred while Ms. Mendonsa was domiciled in California, even if the Court denies that motion, California law should apply.

California has a materially greater interest in the determination of the issues here which involve: 1) alleged wrongdoing by an essentially lifelong California resident; and 2) the Gartner Agreement which acknowledges that the noncompete provision would be unenforceable in California.  But Connecticut choice of law provision is invalid as applied to the breach of

---

[4]     Ms. Mendonsa's medical records could be made available to the Court as a supplemental, sealed, submission but have not yet been obtained due to the expedited nature of this matter.

contract claims.  A federal court "adjudicating state law claims that are pendant to a federal

claim must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994,

1002 (2d. Cir. 1989).  "Connecticut follows the Restatement (Second) of Conflict of Laws, § 187

in deciding whether to enforce a choice of law provision in a contract." *Pruett*, 296 F. Supp. 2d

at 230.  Parties may select the law that will govern unless the chosen forum has no substantial

relationship, or the chosen state's law would contradict a "fundamental policy of a state which

has a materially greater interest than the chosen state."  *Id.* at 232.

　　　　This Court has already determined that California has a materially greater interest

in the determination of issues related to non-competes and has thus set aside the Connecticut

choice of law in employment contracts.  In *Pruett*, this Court applied the rule to reject a

Connecticut choice-of-law provision in an employment agreement where the former employer

sought to enforce a restrictive covenant.  It cited California's "fundamental public policy" that

"contracts restricting persons from engaging in lawful trade or business are void." 296 F. Supp.

2d at 231-233.  *See also* Cal. Bus. & Prof. Code § 16600 (with narrow exceptions, "every

contract by which anyone is restrained from engaging in a lawful profession, trade or business of

any kind is to that extent void"); *Genasys Inc. v. Vector Acoustics, LLC*, No. 22-CV-152 TWR

(BLM), 2022 WL 16577872, at *6 (S.D. Cal. Nov. 1, 2022) (Section 16600 codifies California's

"strong interest in protecting its employees from noncompetition agreements").

　　　　This Court in *Pruett* further concluded — as it should here — that California had

a materially greater interest in the outcome of the case:

　　　　　　The ultimate decision in this case will affect whether Pruett, a
　　　　　　California resident, will be permitted to remain with his California

13

employer, Brookstone Equipment, and whether Brookstone is
entitled to retain the employee of its choice. Although Connecticut
is the state in which United's headquarters is located, it otherwise
has little connection to the facts of this litigation, and no strong
public policy in favor of keeping this case in Connecticut. On
balance, then, it is clear that California's material interest in the
outcome of this litigation significantly outweighs Connecticut's
interest.

296 F. Supp. 2d at 232–33.  The *Pruett* court also concluded that in the absence of a contractual

choice of law provision, California law would apply under the Restatement (Second) Conflict of

Laws § 188, which considers the place of contracting, the place of negotiation of the contract, the

place of performance, the location of the subject matter of the contract, and the domiciles of the

parties.  It noted that although the contract was drafted in Connecticut, significant portions of it

were negotiated in California, it was signed in California, allegedly breached in California, and

had a subject matter located in California "as it cover[ed] Pruett's responsibilities" as a branch

manager in California. *Id.* at 233.

The logic of *Pruett* applies here.  Gartner tendered to Ms. Mendonsa an

employment contract for California employees in 2007.  It never changed those terms at any

time.  For 15 years of her 17 years of employment at Gartner, Ms. Mendonsa lived in California.

When she left Gartner, she was a resident of California.  The Gartner Agreement was allegedly

breached in California.  Ms. Mendonsa serviced clients in California.  And Gartner boasts on its

website that it has three large offices in California.

California law should be applied not only to alleged breaches of the covenants not

to compete, but also to the alleged breaches of the Gartner Agreement's non-solicitation, trade

secret and non-disclosure provisions, to the extent there is such a claim here.  That would require

14

dismissal of any contract-based claims for trade secret misappropriation or the like. *Genasys Inc. v. Vector Acoustics, LLC*, No. 22-CV-152 TWR (BLM), 2022 WL 16577872, at * 8 (S.D. Cal. Nov. 1, 2022) (voiding employment agreement barring disclosure of trade secrets as invalid under §16600, in light of protections available under DTSA and California Uniform Trade Secret Act) (citing *Gatan, Inc. v. Nion Co,* No. 15-cv-1862-PJH, 2016 WL 1243477, at * 3 (N.D. Cal. Mar. 30, 2016) (trade secret exception to § 16600 would permit an otherwise invalid employee agreement to stand "if necessary to protect an employer's trade secret").

California's strong interest in ensuring its residents may pursue a career of their own choice is longstanding but is also gaining momentum in other states as well as at the federal level. "[C]ourts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 946 (Cal. 2008) (invalidating noncompetition agreement preventing employee from performing professional accounting services to former employer's clients). California courts have found that §16600 "protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice,'" *Id.* (quoting *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853, 859 (Cal. Ct. App. 1994)).

Eliminating any doubt as to the significance California ascribes to its prohibition against non-competition agreements is Assembly Bill 747, a bill currently pending before the California Legislature which would grant harsh penalties against employers and attorneys who seek to enforce non-competition restrictions. Under Assembly Bill 747, an employer who even presents an employment agreement containing a noncompetition provision to an employee would be subject to a fine of up to $5,000 per employee. A.B. 747 §1, Cal. Leg., Reg. Sess. (Cal.

15

2023).  An attorney who attempts to enforce a non-competition agreement may be subject to professional discipline, including disbarment.  *Id.* at §3.

While noncompete restrictions are generally regulated by the states, federal agencies have recently gotten involved.  For example, Federal Trade Commissions' proposed rule on non-competition covenants states that "[f]or workers who are not senior executives, non-compete clauses are exploitative and coercive at the time of contracting because they take advantage of the unequal bargaining power between employers and workers."[5]  In fact, the FTC opines that "it is critical to protect workers who are not senior executives from the exploitative and coercive nature of non-complete clauses."  Congress has reintroduced The Workforce Mobility Act of 2023 (S. 220) as of February 1, 2023 which would, for the most part, ban noncompetes.  And on May 30, 2023, the National Labor Relations Board General Counsel issued a release that noncompete provisions are an unfair labor practice because they interfere with employees' right to organize and engage in concerted activities.  *See* NLRB General Counsel Memorandum GC 23-08 (May 30, 2023).  The General Counsel is urging the entire NLRB to adopt a standard under which noncompetes would be a violation of The National Labor Relations Act unless they are narrowly-tailored to address special circumstances.  Minnesota recently banned noncompetes.  New York has pending legislation to the same effect.  Many

---

[5]    FTC's Proposed Non-Complete Clause Rule, 16 C.F.R. 910.  "Non-complete clauses are typically standard-form contracts that workers are unlikely to read.  Moreover, workers rarely bargain over non-complete clauses and rarely seek the assistance of counsel in reviewing non-complete clauses.  Meanwhile, employers are more likely to seek the assistance of counsel in drafting employment terms, including non-complete clauses."

other states have statutory restrictions, including Massachusetts, Maryland, Virginia, and

Nevada.  Connecticut currently has proposed restrictions as well.

**C     Judgment Should Be Granted In Defendants' Favor
        And The Noncompete Claims Should Be Dismissed**

A motion for judgment on the pleadings provides an excellent vehicle to decide

an issue such as this that, on the facts as pled, demonstrate the movant is entitled to judgment as

a matter of law. *See Amphenol Corp. v. Factory MVP. Ins. Co.,* 2023 WL 3057146 at *2 (D.

Conn. Apr. 24, 2023) (granting *Patel v. Searles,* 305 F. 3d 130, 135 (2d Cir. 2002) (granting

motion for judgment on the pleadings for an insurance dispute)).  *See also Citibank, N.A. v.

Morgan Stanley & Co. Int'l,* 724 F. Supp. 2d 398, 404 (S.D.N.Y. 2010). In deciding a Rule 12(c)

motion, like a motion to dismiss pursuant to Rule 12(b)(6), the court accepts the non-moving

party's allegations as true and draws all reasonable inferences in that party's favor. *See, e.g.,

Sewell v. Bernardin,* 795 F.3d 337, 339 n.3 (2d Cir. 2015); *Burnette v. Carothers,* 192 F. 3d 52,

56 (2d Cir. 1999). The Court may consider the complaint and answer, and any instruments

attached to the complaint or answer in deciding a Rule 12(c) motion. *See, e.g., Wells Fargo

Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

Here, the complaint itself is all that is required.  The Gartner Agreement that Ms.

Mendonsa signed is an agreement for California employees,[6] and California law prohibits

noncompetes and enforcement of them.

---

[6]     And Info-Tech's response to the May 5 letter from Gartner makes her California
        residence clear.  Gartner elected not to include this letter in the exhibits to its complaint,

This Court should issue judgment in favor of Defendants on all claims arising out of the noncompete clause.  As set forth above in detail, Gartner cannot enforce that restriction against Ms. Mendonsa, and Info-Tech cannot be held liable for allegedly inducing her to breach it.

## II.   THE COURT SHOULD DENY THE TRO AND PRELIMINARY INJUNCTION REQUEST BECAUSE GARTNER HAS FAILED TO MEET ITS BURDEN ON ITS BREACH OF CONTRACT CLAIM

A party seeking a preliminary injunction must ordinarily establish (1) "irreparable harm"; (2) "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party"; and (3) "that a preliminary injunction is in the public interest."  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citing *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).  Because preliminary injunctive relief is an "extraordinary remedy," it is "never [to be] awarded as of right."  *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010).  "Aside from the temporal distinction, the standards for obtaining a preliminary injunction and a temporary restraining order are the same."  *Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 324-25 (D. Conn. 2021).

---

but it should be considered as part of the pleadings.  Gartner cannot avoid it simply by choosing to omit it.

A TRO is necessarily limited to a very brief period because what may later prove to be a right of the party who is restrained is suspended before even a tentative adjudication as to that right has been had. . . .  The Court must examine whether the movants have demonstrated a threat of irreparable harm that will occur immediately to justify a temporary restraining order, while the temporal context of a preliminary injunction takes a longer view." *Id.* at 324 (internal quotation marks and citation omitted) (preliminary injunction and temporary restraining order denied).

Even if this Court does not transfer and does not apply California law, Gartner still does not come close to meeting its burden of establishing entitlement to preliminary relief of any kind on its breach of contract claim against Mendonsa.

**A      Gartner Cannot Establish Likelihood of Success**

Preliminary relief is not available to a party which like Gartner, seeks relief based on speculation and surmise.  The record demonstrates that Ms. Mendonsa was a dutiful Gartner employee who went out of her way to ensure a smooth transition for her colleagues upon her resignation.  She acknowledged the importance of Gartner's interest in proprietary and confidential information and has abided it.  She followed Gartner's separation instructions to the letter and deleted all client confidential information.  She also deleted anything she considered sensitive or that Gartner might use to distinguish itself, including the Top Trends document identified in the complaint.  She then accepted a fundamentally-different position with Info-Tech.  Yet Gartner claims the very act of her accepting employment with Gartner warrants emergency relief.  That is just not supported by the facts or the law.  As initial matter, as set forth above, all claims relating to an alleged breach of a noncompete covenant should be dismissed by

19

this Court.  Ms. Mendonsa is a California resident, and the noncompete covenant may not be

enforced against her nor may Info-Tech be liable for inducing a breach of that covenant.  But

even if the Court does not want to consider this point at this juncture, Gartner still cannot

demonstrate a likelihood of success on the merits of its breach of contract claim against

Mendonsa, as the noncompete covenant is unreasonable as a matter of law.  Further, Gartner

cannot establish a likelihood of success or violation of non-solicitation obligations.

**B**      **The Noncompete Covenant Is Unreasonable.**

Connecticut courts consider five criteria in "determining the reasonableness of a

restrictive covenant: (1) the length of time the restriction is to be in effect; (2) the geographic

area covered by the restriction; (3) the degree of protection afforded to the party in whose favor

the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and

(5) the extent of interference with the public's interests. . . .  The five prong test [] is disjunctive[,

and]  . . .  a finding of unreasonableness in any one of the criteria is enough to render the

covenant unenforceable." *Sunbelt Rentals,* 552 F. Supp. 3d at 325; *see also Sylvan R. Shemitz*

*Designs, Inc. v. Brown*, No. AANCV136013145S, 2013 WL 6038263, *6 (Conn. Super. Ct. Oct.

23, 2013).

The noncompete covenant at issue here states:

(i)      <u>Analyst or Consultant Position</u>.  The Employee agrees that,
for a period of one year following the termination of the
employment for any reason, the Employee will not engage in any
Competitive Acts:  (A) with any client of the Employer with whom
the Employer has a business relationship and with whom the
Employee maintained contact at any time during the Employment;
(B) with any product or service vendor with whom the Employer
has a business relationship and within whom the Employee

maintained contact at any time during the Employment; (C) with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to the termination of Employment; or (D) within the Non-Compete Area.

Competitive Acts are defined as:

(i) Competitive Acts should mean "the development, marketing or selling of — or assisting others to develop, market or sell — a product or service which is competitive with the products or services of the Employer (both those existing during the Employment and those which are planned for the future and of which the Employee learns during the Employment and those which are planned for the future and of which the Employee learns during the Employment), and the solicitation, directly or indirectly, of the Employer's clients or known prospects for the purposes of developing, marketing or selling such products or services, by the Employee (whether as a consultant, analyst, sales person, independent contractor, independent business venturer, partner, member, employee or otherwise)."

Gartner alleges that her role at Info-Tech is similar to her analyst role at Gartner. That is simply not true as set forth in the accompanying Mendonsa and Scheidegger declarations. Her role at Info-Tech is fundamentally different than the analyst position she had at Gartner for almost seven years.  Further, as set forth below, the other factors favor Ms. Mendonsa significantly.

### 1.  Ms. Mendonsa Would Be Precluded from Pursuing Her Occupation

"A restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family. . . . Under this consideration, the test for reasonableness is not whether the defendant would be able to make a living in other ways, or in other occupations, but whether or not the Agreement as drafted and applied would unfairly restrain her opportunity to pursue her occupation." *Sunbelt*

*Rentals, Inc.*, 552 F. Supp. at 329.  Enforcement of this noncompete restriction would preclude Ms. Mendonsa from pursuing her occupation in any aspect of the technology advisory space, which she has done for her entire professional life in one form or another starting before working at Gartner and which has an extremely small field of participants.  And with no immediate opportunity for advancement, being denied a promotion, and having a disappointing performance evaluation, why would she stay?  Gartner is not entitled to shackle her from working in her chosen field, especially when it is uncontested that the signs for her future at Gartner were not terribly positive.  *See also Creative Dimensions, Inc. v. Laberge*, 2012 WL 2548717 at *5 (Conn. Super. Ct. May 31, 2012) (rejecting noncompete as overbroad as it seriously impeded ex-employees from pursuing their careers); *Sylvan R. Shemitz Designs, Inc. v. Brown*, No. AANCV136013145S, 2013 WL 6038263, at *8 (Conn. Super. Ct. Oct. 23, 2013).

### 2. Ms. Mendonsa Was Not Unique and Did Not Develop Client Strategy or Relationships

Ms. Mendonsa was not a senior executive at Gartner.  She was one of many Gartner analysts, and the Gartner organizational chart would show that she was six levels removed from Gartner's C-suite.  Her own team had multiple other analysts, and that was just one part of Gartner's huge operation.  Further, Ms. Mendonsa was denied promotions, including one just before she resigned, and was subject to a disappointing performance evaluation in the beginning of 2023.  Gartner now, however, claims she was integral to the Gartner operations, professing that she essentially controlled client relationships, which is simply not correct.

An employee's "knowledge of the intricacies of the sales operation at [the former employer], or even his status as its highest ranking sales executive, does not transform him into a

22

unique employee for purposes of a restrictive covenant analysis". *Veramark Technologies, Inc. v. Bouk*, 10 F.Supp.3d 395, 404-05 (W.D.N.Y. Apr. 2, 2014). Further, Gartner's argument that Ms. Mendonsa has knowledge of important COVID-19-related research is just not credible. While Ms. Mendonsa did focus significant efforts on work related to the pandemic, that work has become dated and irrelevant. Simply put, that is stale. *See International Paper Co. v. Suwyn*, 966 F.Supp. 246, 258 (S.D.N.Y. 1997) (finding information not confidential and denying preliminary relief). *See AM Medica Communications Group v. Kilgallen*, 90 Fed.Appx. 10, 11 (2d Cir. 2003) (affirming denial of preliminary injunction and granting motion to dismiss complaint; noting injunctive relief is granted only when the employee provides "***special, unique or extraordinary services***" (emphasis added). Try as it might, Gartner cannot establish that Ms. Mendonsa provided special or extraordinary services, and it will not succeed in advancing this allegation.

Further, where, as here, an employee's customer relationships are not long-standing and personal, the employer has no legitimate protectable interest. *See, e.g., DS Parent, Inc. v. Teich*, 2014 WL 546358, at *10-11 (N.D.N.Y. Feb. 10, 2014) (denying preliminary injunction). Ms. Mendonsa had short transactional contacts with many clients in her role as a Gartner analyst; she did not have longstanding customer relationships.

3.  **The Public Interest Favors on Employee's Ability to Work, and the Protection Given to Gartner is Excessive**

"In order to be valid and binding, a covenant which restricts the activities of an employee following the termination of his employment must be partial and restricted in its operation in respect either to time or place, and must be reasonable – that is, it should afford only

a fair protection to the interest of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public. The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family." *Sunbelt Rentals,* 552 F. Supp. 319.

As set forth above, it is clearly in the public interest to permit individuals to pursue the career of their choice and without restriction, particularly where, as here, the employee does not have any direct reports, does not formulate or direct client strategies or gain deep understanding of client goals.  Nor is it in the public interest to prevent those individuals from earning a living to support their families.  Gartner's interests can be protected by other mechanisms such as the non-solicit and non-disclosure obligations when Ms. Mendonsa has abided and intends to continue to abide.

4.     **The Time and Geographical Restrictions Are Excessive and Not Reasonable**

"[T]ime and geographical restrictions [in employment agreements] are to be reviewed as intertwined considerations, meaning, for instance, that a restriction covering a large area might be reasonable if in effect for a brief time, while a restriction covering a small area might be reasonable for a longer time." *Sunbelt Rentals, Inc.*, 552 F. Supp. 3d at 327; *see also Onward Search LLC v. Noble*, No. 3:22-cv-00369 (VAB), 2022 WL 2669520, at *13 (D. Conn. July 11, 2022) (denying motion for TRO and preliminary injunction).  Here, there is a one-year noncompete that would span at least five states.  Based on this unreasonable provision alone, this

24

Court should reject Gartner's attempt at enforcement.  *Sylvan R. Shemitz Designs,* 2013 WL 6038263, at *7.

Enforcement of Gartner's "Competitive Area" would prohibit Ms. Mendonsa from working at all within 50-mile radius of Stamford Connecticut or in the states of Connecticut, New York, Massachusetts, part of Arizona and part of California law for one year. This Court should find this unreasonable as a matter of law.

5.     **The noncompete covenant is not enforceable in California, where Mendonsa resides and works.**

As set forth above, the Gartner Agreement specifically recognizes that noncompete covenants are not enforceable in the state of California, Gartner "agrees that is [sic] shall not attempt to enforce this provision outside the state of California while Employee is employed within the state of California."  Gartner drafted this agreement, presented it to Mendonsa in 2007, and never varied its terms, even when she took on a new and fundamentally-different position in 2016 or when she notified Gartner of her return to California effective January 1, 2023.  So despite having had ample time and opportunity to alter Ms. Mendonsa's terms of employment, Gartner never did.  And it cannot now, whether by argument on this motion or attempting to show that Ms. Mendonsa is not "really" a California resident.

Simply put, Gartner's tactic of ignoring Ms. Mendonsa's residence does not change the bargain it struck with her.  "The construction and legal effect of a contract 'cannot be changed or varied by reason of its inconvenience to the parties or the unreasonableness of its terms." *Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 325 (D. Conn. 2021) (holding

25

that plaintiff ex-employer was unlikely to succeed on the merits of its breach of contract claim

against defendant employee).

**C      Mendonsa Did Not Solicit Any Gartner Clients And Has**
**         Not Breached Any Non-Solicit Obligation To Gartner**

Ms. Mendonsa is aware of her non-solicitation obligations with respect to Gartner

clients, and Info-Tech expects her to honor that obligation.  But a one-year non-solicit against all

of Gartner's clients is unreasonable as a matter of law.  Gartner has hundreds if not thousands of

clients.  A reasonable boundary should be drawn around that obligation as Ms. Mendonsa, in her

last year, did 370 client calls, and all but a few were her only interactions with those clients.

There is no evidence before this Court that Ms. Mendonsa actually solicited a

Gartner client or that Info-Tech urged or induced her to do so.  Gartner presented only hearsay

statements (likely at least third-hand) about the client call it points to.  But the complete record

shows that Ms. Mendonsa had no substantive role in this call, was present on her second day at

Info-Tech only for training, and immediately told her supervisor that she could not work with

this client (which her supervisor agreed with).  The evidence also shows that solicitation by Ms.

Mendonsa here was not even necessary – this client had already verbally committed to Info-Tech

weeks before.  Further, Ms. Mendonsa will be assigned to specific Info-Tech clients and will be

responsible only for about 20 clients.  Thus, no solicitation has happened and there is very little

risk it will given the limited number of clients Ms. Mendonsa will be assigned to.  No order

against Ms. Mendonsa (or Info-Tech) is appropriate.

26

**D**      **Gartner Cannot Rely On The "Sufficiently Serious Questions Going To The Merits" Test Because A Balancing Of The Hardships Tip Decidedly Against It**

Gartner cannot avail itself of a more lenient standard on this motion.  The alternative "sufficiently serious questions of fact" standard can *only* be used where "a balancing of the hardships decidedly favor the moving party."  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *North Amer. Soccer League, LLC v. U.S. Soccer Fed. Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018).  Any hardship squarely impacts Ms. Mendonsa and does not affect Gartner, even remotely.  Ms. Mendonsa will not only be prevented from working for Info-Tech if the noncompete clause is enforced, she will be prevented from working at all in her chosen field.  This has especially grave consequences for her, as she suffers from sometimes-debilitating medical issues as well as for her family, which relies on her income in order to provide for children with unique circumstances, both present and future.  *See Sylvan R. Shemitz Designs*, 2013 WL 6038263, at * 11 (finding balancing of equities/hardship favored employee who was primary income earning and had child with medical needs).

By contrast, there is no identifiable hardship to Gartner, and Gartner does not articulate any.  Ms. Mendonsa exceeded her duties upon her departure to ensure that everything was organized and in order and that work could be continued without interruption.  And Gartner has hundreds of other analysts on which it can rely.

**E**      **Gartner Cannot Show Immediate And Irreparable Harm**

Mendonsa's employment with Info-Tech does not create irreparable harm for Gartner.  For all of these reasons described above, there is simply no irreparable harm to Gartner.  Any so-called harm it has identified is either baseless or has been cured by identification of all

documents relating to Gartner that Ms. Mendonsa still possesses, none of which contain client confidential information.  In addition, Info-Tech identified one document Ms. Mendonsa sent to three Info-Tech employees.  That document is a collection of public information.  The rest of the allegations are simply sky-is-falling speculation.  *See Sylvan R. Shemitz Designs*, 2013 WL 6038263, at * 10-11 (finding no irreparable harm).  *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 486 (W.D.N.Y. 2018) (holding that a plaintiff who failed to supply evidence beyond conclusory averments did not make a sufficient showing that irreparable harm is likely).  In addition, Gartner can hardly claim to be suffering irreparable harm upon the departure of an employee who it failed to promote and to whom it gave a disappointing performance evaluation.

**F    A Temporary Restraining Order Is Not In The Public Interest**

Ms. Mendonsa exemplifies the type of employee that the law protects from unreasonable restrictive covenants, even without considering the legislation and rules abounding. It is not in the public interest to disallow individuals, particularly employees who are not high-level executives, from lawfully pursuing the career of their choice.  Nor is it in the public interest to prevent those individuals from earning a living to support their families, particularly when they, like Ms. Mendonsa, suffer from serious health issues and personal challenges.  The public interest factor also tips heavily for Defendants in that noncompetes under fire across the nation and intensely scrutinized in favor for more legitimate protections like nondisclosure or nonsolicitation clauses.

28

### III. THE COURT SHOULD DENY THE TRO REQUEST BECAUSE GARTNER HAS FAILED TO MEET ITS BURDEN ON ITS MISAPPROPRIATION CLAIM

Gartner similarly failed to present facts supporting the essential elements of its trade secret misappropriation claim against Defendants.[7]  First and foremost, Gartner while it alleged unauthorized disclosure or use of any trade secret or confidential information will not be able to demonstrate likelihood of success (or any questions going to the merits).  The full record regarding the alleged misappropriation is before the Court.  There is one document that Gartner identifies ("Top Trends").  That document was deleted by her in the course of her separation from Gartner.  Further, Ms. Mendonsa has notified Gartner of some documents she had on her personal drive, none of which were disclosed by her or used for any purpose by her or Info-Tech.  Anything else Gartner has alleged is rank speculation.  The complete record makes clear there has been no unauthorized disclosure or use by Ms. Mendonsa or Info-Tech.

### A    Gartner failed to demonstrate its likelihood of success on the merits of misappropriation claim.

Under the Defend Trade Secrets Act (DTSA) and the Connecticut Uniform Trade Secrets Act, a plaintiff must demonstrate that the defendant (1) acquired the trade secret by improper means, or (2) disclosed or used the trade secret without consent.  *Sunbelt Rental, Inc.*, 552 F.Supp.3d at 330.  "Improper means" include "theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy," but exclude "reverse engineering,

---

[7]    As set forth above, to the extent Gartner relies on alleged misappropriation as a basis for breach of contract, that should be rejected as duplicative of the independent trade secret claim in any event the analysis is similar.  The Connecticut Uniform Trade Secrets Act claim is similarly duplicative, so the discussion here includes those claims as well.

independent derivation, or any other lawful means of acquisition." *Smart Team Global LLC v. Humble Tech LLC*, 2022 WL 847301, at *5 (S.D. N.Y. Feb. 18, 2022) (citing 18 U.S.C. § 1839(6)). The claimant bears the burden of identifying a purported trade secret with sufficient specificity. *Syntel Sterling Best Shores Mauritius Lmtd. V. The TriZetto Group, Inc*., 2023 WL 3636674, at *5 (2d Cir. May 25, 2023).

To show that a process constitutes a trade secret, a party must describe the trade secret with "specific and concrete information." *Next Communications, Inc. v. Viber Media, Inc.*, 758 Fed.Appx. 46, 48-49 (2d Cir. 2018); *Heyman v. AR. Winarick, Inc*., 325 F.2d 584, 590 (2d Cir. 1963) (rejecting trade secret claim that was "so vague and indefinite as not to be entitled to protection under the law of trade secrets"). The owner of the trade secret must take "reasonable measures" to keep the proprietary information secret. 18 U.S.C. § 1836; *Mason v. Amtrust Financial Services, Inc*., 848 Fed.Appx. 447, 450 (2d Cir. 2021); *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985).

It appears here that the real argument by Gartner is that Ms. Mendonsa cannot do her job at Info-Tech without revealing Gartner's trade secrets. This is based on the principle of inevitable disclosure. "[T]he inevitable disclosure doctrine treads an exceedingly narrow path through judicially disfavored territory." *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d 299, 310 (S.D.N.Y. 1999). "The following factors are considered in determining ***whether to grant the injunctive relief sought by a prior employer on the*** basis ***of inevitable disclosure***: '(1) [whether] the employers in question are direct competitors providing the same or very similar services; (2) [whether] the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade

30

secrets of his former employer; and (3) [whether] the trade secrets at issue are highly valuable to both employers.'" *Sunbelt Rentals,* 552 F. Supp. at 331 (citing *EarthWeb, Inc. v. Schlack*, 71 F.Supp.2d at 310.  Of course, general skills and knowledge acquired during tenure at a former employer are insufficient to conclude that misappropriation of trade secrets is inevitable.  *Sunbelt Rentals,* 552 F. Supp. at 331 (citing *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995)).

In *Sunbelt Rentals* this Court denied a former employer's motion for injunctive relief and rejected inevitable disclosure.  Sunbelt Rentals was defendant's former employer, and the employment agreement at issue contained noncompetition, nonsolicitation, and confidentiality covenants.  552 F. Supp. 3d at 323-24.  After resigning from Sunbelt, defendant started work for a company that Sunbelt considered a competitor.  *Id*. at 324.  Sunbelt contended that defendant's new employment violated the noncompetition covenant, and that trade secret misappropriation was inevitable.  *Id*.  This Court denied injunctive relief.  The factors it considered in so holding were that the employee's positions at the two companies were significantly different; the companies' roles in the industry were distinguishable, and a failure by the former employer to demonstrate how purportedly confidential and proprietary information would prove of particular value in defendant's new position.

The facts from *Sunbelt Rentals* are present here, and the result should be the same. Gartner and Info-Tech are competitors.  But, Ms. Mendonsa's position as an Executive Counselor at Info-Tech is materially different from her role as a Gartner analyst.  She will not be doing research as an Executive Counselor, and the research she may deliver to clients will have been done by Info-Tech employees with no relationship to this dispute.  Gartner is an industry giant while Info-Tech is much smaller in both number of employees (19,000 for Gartner versus

1,500 for Info-Tech).  While they do compete for some clients, Info-Tech has unequivocally stated that it is not interested in Gartner's proprietary methods.

And to the extent Gartner relies on anything other than meritable disclosure, there is no misappropriation.  Nothing that Gartner can reasonably claim protection over was disclosed or used by anyone.

**B       Gartner cannot show immediate and irreparable harm.**

Gartner's trade secret claims do not warrant injunctive relief because there is no irreparable harm.  Info-Tech instructed Mendonsa to honor her non-disclosure and non-solicit obligations, told Gartner it would honor those obligations, and did not want any Gartner proprietary information in a letter from counsel on May 16, 2023.  Info-Tech does so again here in response to this motion.

A potential "threat" of misappropriation — which is all there is here even under Gartner's allegations — is not enough to demonstrate irreparable harm, and that is all Gartner alleges.  *See, e.g., Control Sys., Inc. v. Realized Sols., Inc.*, No. 3:11CV1423 PCD, 2011 WL 4433750, at *3 (D. Conn. Sept. 22, 2011) (denying injunctive relief because no irreparable harm was established and assertions of misappropriation do not "without more" show a plaintiff will likely suffer irreparable harm).

"The mere possibility of confidential disclosures does not satisfy the irreparable harm requirement and hence justify even a TRO."  *PepsiCo, Inc. v. U.S. S.E.C.*, 563 F.Supp. 828, 831 (S.D.N.Y. 1983).  "[T]he law in this Circuit requires that irreparable harm be ***likely***, not merely possible."  *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 486 (W.D.N.Y. 2018)

(emphasis added) (holding that plaintiff who failed to supply evidence beyond conclusory averments did not make a sufficient showing that irreparable harm is likely).

Here, Gartner's allegations do not show irreparable harm is possible, nevermind likely.  None of its allegedly confidential information has been disclosed to Info-Tech by Ms. Mendonsa.  The remainder of the factors (*e.g.,* hardship, public interest) are addressed above in detail.

### Conclusion

For the foregoing reasons, this Court should: (1) deny any relief to plaintiffs; (2) transfer the claims against Ms. Mendonsa to the Central District of California; and (3) enter judgment in favor of Defendants on all noncompete claims pursuant to Rule 12(c).

Dated:  June 6, 2023

Respectfully submitted,

By: */s Edmund J. Ferdinand, III*
    Edmund J. Ferdinand, III ct21287
Ferdinand IP, LLC
1221 Post Road East, Suite 205
Westport CT, 06880
Tel: (203) 557-4224
Email: Jferdinand@FIPLawGroup.com


Jodyann Galvin ct24599
*Pro Hac Vice*
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202
Email: Jgalvin@HodgsonRuss.com

*Counsel for Defendants*