# Exhibit B

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
312.499.6300 main
312.499.6301 fax
www.sheppardmullin.com

312.499.6304 direct
kcloutier@sheppardmullin.com

May 5, 2023

**VIA FEDEX OVERNIGHT**

Ryan Huggett
General Counsel
Info-Tech Research Group
345 Ridout Street North
London, ON, Canada
N6A 2N8

Re:     Obligations of Alia Mendonsa to Gartner, Inc.

Dear Mr. Huggett:

Please be advised Sheppard, Mullin, Richter & Hampton LLP represents Gartner, Inc. and its subsidiaries and affiliates (collectively referred to as "Gartner" or "the Company"). It has come to our attention that a former Gartner employee, Alia Mendonsa, has commenced employment with Info-Tech Research Group ("Info-Tech"). Ms. Mendonsa is subject to certain post-employment obligations to Gartner, including a commitment not to compete against Gartner for one year following the separation of her employment. The purpose of this letter is to notify Info-Tech of Ms. Mendonsa's continuing obligations and to seek certain written assurances regarding same.

In connection with Gartner's provision of trade secrets and confidential information, Ms. Mendonsa agreed to certain non-competition, non-solicitation and non-disclosure obligations in the Agreement Regarding Certain Conditions of Employment (the "Agreement") which she signed on January 22, 2007. A copy of the Agreement is attached hereto. These obligations remain in full force and effect. In pertinent part, the Agreement prohibits Ms. Mendonsa from, among other things, engaging in any Competitive Acts in the Non-Compete Area for a period of one (1) year following the termination of her employment with Gartner.

The Agreement defines "Competitive Acts" and "Non-Compete Area" as:

(i) Competitive Acts shall mean the development, marketing or selling of - or assisting others to develop, market or sell - a product or service which is competitive with the products or services of the Employer (both those existing during the Employment and those which are planned for the future and of which the Employee learns during the Employment), and the solicitation, directly or indirectly, of the Employer's clients or known prospects for the purposes of developing, marketing or selling such products or services, by the Employee (whether as a consultant, analyst, sales person, independent contractor, independent business venturer, partner, member, employee or otherwise).

**SheppardMullin**

Ryan Huggett
Info-Tech Research Group
May 5, 2023
Page 2

> (ii) Non-Compete Area shall mean any location within a fifty (50) mile radius of the principal office in which the Employee worked at any time during the one year period prior to the termination of the Employment. If the Employee's principal office was in Stamford, Connecticut at any time during the one year period prior to the termination of the Employment, then the Non-Compete Area shall be defined as any location within (A) a fifty (50) mile radius of Stamford, Connecticut, and (B) the states of Connecticut, New York and Massachusetts. *See* Agreement, ¶ 5(a)(1).

Ms. Mendonsa resigned from Gartner in April 2023, so her non-competition covenant (including a client non-solicitation provision) remains in full force and effect. In addition to this non-competition obligation, Ms. Mendonsa also agreed to abide by employee non-solicitation and confidentiality/non-disclosure obligations, as contained in the Agreement. *See* Agreement, ¶¶ 1, 5(d). Perhaps most troubling, we recently learned Ms. Mendonsa participated in a sales meeting on InfoTech's behalf with a client she met, and with whom she enjoyed a longstanding working relationship solely by virtue of her Gartner employment – in direct violation of her post-employment obligations to Gartner.

This letter provides Info-Tech written notice of these provisions and Ms. Mendonsa's related obligations under such provisions, the federal Defend Trade Secrets Act as well as other federal, state and local laws.

As you well know, Info-Tech is a direct competitor of Gartner, and Ms. Mendonsa's employment at Info-Tech violates her contractual commitments to Gartner. To determine the nature and extent of Ms. Mendonsa's breaches to date, we demand Info-Tech provide us with a description of Ms. Mendonsa's duties and responsibilities at Info-Tech. We further request Info-Tech provide us with written assurances that it has not and does not intend to induce any violations of Ms. Mendonsa's obligations to Gartner, including her client non-solicitation (as contained in the definition of "Competitive Acts") and employee non-solicitation commitments and her obligation not to use or disclose Gartner's confidential information. We also seek written assurances Info-Tech does not currently possess, and will not seek possession of or otherwise accept, any of Gartner's trade secrets or confidential information. Please provide these written assurances by the close of business on May 10, 2023.

This letter confirms Gartner has not waived and hereby specifically reserves all rights and remedies available to it under applicable law. Gartner intends to vigorously enforce all its rights and will take whatever steps are necessary to protect its confidential information, trade secrets and customer relationships.

In addition, Info-Tech is hereby advised to take all necessary and appropriate steps to preserve documents, data and other evidence that may be relevant in this matter. Info-Tech is prohibited by law from destroying, secreting, modifying or otherwise spoliating any documents or other evidence that would have been discoverable in any dispute between or among Info-Tech and Gartner, including (but not limited to) any and all electronic or paper files, memos, correspondence, emails, social media postings/communications, phone calls, voice recordings, texts or documents of any kind.

**Sheppard**Mullin

Ryan Huggett
Info-Tech Research Group
May 5, 2023
Page 3

If you have questions, please contact me directly. If Info-Tech is represented by counsel, please forward this letter to its counsel.  Thank you for your attention to this matter.

Very truly yours,

Kevin M. Cloutier
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Enclosure

SMRH:4880-3863-4081.3

## AGREEMENT REGARDING CERTAIN CONDITIONS OF EMPLOYMENT
### (California employees)

In consideration of employment by Gartner Group, Inc. and/or any of its subsidiaries (collectively, the "Employer") and for such other good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned (the "Employee") hereby acknowledges and agrees to the following terms and conditions:

1.      Non-Disclosure. (a) The employee acknowledges that the Employer's assets include many items, such as (i) financial information, (ii) products, (iii) product and services costs, prices, profits and sales, (viii) forecasts, (ix) computer programs, (x) data bases (and the documentation and information contained therein), (xi) computer access codes and similar information, (xii) software ideas, (xiii) know-how, technologies, concepts and designs, (xiv) research projects and all information connected with research and development efforts, (xv) records, (xvi) business relationships, methods and recommendations, (xvii) client lists (including identities of clients and prospective clients, identities of individual contracts at business entities which are clients or prospective clients, client spending, preferences, business or habits), (xviii) subscription or consultant termination dates, (xix) personnel files, (xx) competitive analyses, and (xxi) other confidential or proprietary information that has not been made available to the general public by the Employer's senior management.  The Employee further acknowledges that all information related to the operation of the Employer's business, including, without limitation, knowledge of the Employer's assets referenced above and other tangible or intangible assets and other information obtained by the Employee in the course of employment (collectively, the "Employer's Property") (i) are confidential and trade secrets of the Employer (collectively, the "Confidential Information"), (ii) shall remain the property and trade secrets of the Employer, and (iii) may be subject to trademark, tradedress, copyright or similar protections.  The Employee acknowledges that any disclosure of the Confidential Information, even inadvertent disclosure, would cause irreparable and material damage to the Employer.

(b)      While the Employee is employed by the Employer (the "Employment") and after termination of the Employment, for any reason, the Employee agrees (i) not to use or disclose the Confidential Information or any Confidential Information of the Employer's clients, other than solely in the furtherance of the Employer's business, (ii) to take all lawful measures to prevent the unauthorized use or disclosure of the Confidential Information to any third party, (iii) to take all lawful measures to prevent unauthorized persons or entities from obtaining or using the Confidential Information, and (iv) not to take any actions which would constitute or facilitate the unauthorized use or disclosure of Confidential Information.  The term "unauthorized" shall mean (i) in contravention of any written policies or procedures of the Employer; (ii) otherwise inconsistent with the Employer's measures to protect its interests in its Confidential Information to any third party, (iii) to take all lawful measures to prevent unauthorized persons or entities from obtaining or using the Confidential Information, and (iv) not to take any actions which would constitute or facilitate the unauthorized use or disclosure of Confidential Information.  The term "unauthorized" shall mean (i) in contravention of any written policies or procedures of the Employer; (ii) otherwise inconsistent with the Employer's measures to protect its interests in its Confidential Information; (iii) in contravention of any lawful instruction or directive, either written or oral, of any employee of the Employer empowered to issue such instruction or directive; (iv) in contravention of any duty existing under law or contract.

(c)      the Employee acknowledges that all of the items comprising the Confidential Information are confidential, whether or not the Employer specifically labels such information as confidential or internally restricts access to such information.  The Employee also acknowledges that the Employer may have separate policies in effect from time to time regarding the protection of its trade secrets.  The Employee agrees to abide by these policies.

(d)     During the course of Employment, the Employee acknowledges that he/she may work with increasingly sensitive or valuable information.  In these cases, even more specific understandings regarding Confidential Information may be required.  These understandings would supplement, rather than replace, the terms of employment stated herein.

2.     <u>Confidentiality of Materials of Others</u>.  If the Employee believes that the Employee is a party to employment or other agreements or possesses trade secrets, proprietary, confidential or other information of another entity which could restrict the Employer's ability to use the Employee's talents to the fullest extent anticipated or which could compromise the rights of others, the Employee must disclose that fact to the Employer in advance of the commencement of any Employment.  The non-disclosure of any of the foregoing shall subject the Employee, at the option of the Employer, to reassignment to another position with the Employer or termination of the Employment.  The Employee agrees to hold harmless the Employer from any damages or liability resulting from such restrictions.   The Employer agrees that it will endeavor not to compromise knowingly such other entity's lawfully protected confidential information.

3.     <u>Protection of Employer's Property</u>.  The Employer requires the assistance of the Employee in the protection of the Employer's Property, because the loss or impairment of the Employer's Property would materially damage the Employer and its shareholders, clients and employees.  Any misappropriation of any of the Employer's Property is theft and will be treated as such by the Employer.  The Employee agrees that all plans, information or work product which the Employee develops or is involved in developing during the Employment shall belong to, and be the sole property of, the Employer.  The Employee agrees to disclose to the Employer promptly and fully any such plans, information or work product.  The Employee agrees that under no circumstances will he/she remove from the Employer's offices any books, records, documents or any information which can be stored in or retrieved from a computer, or any other of Employer's Property, other than for the specific purpose of performance of the Employee's job with the Employer.  Additionally, the Employee agrees to deliver to the Employer all of the Employer's Property and confidential materials within the Employee's possession or control, including any handwritten notes or other written material which relate to Confidential Information (i) upon the termination of the Employment, for any reason, and (ii) at any other time requested by the Employer.   The Employee shall acknowledge in writing the return of all such materials when requested to do so by the Employer.

4.     <u>Assignment of Inventions</u>.  (a) Unless otherwise specifically agreed to in writing, the Employee agrees to disclose promptly to the Employer in writing all inventions, improvements, discoveries, software and writings, including books and magazine articles, which are conceived, made, discovered or written, jointly or singly, whether on the Employer's time or on the Employee's own time during the Employment (collectively, the "<u>Inventions</u>").   The Employee further agrees that all Inventions shall belong to and be the property of the Employer.   The Employee agrees to execute all instruments of assignment and other papers to provide additional evidence of the vesting of the entire right, title and interest in the Inventions in the Employer, at the Employer's request and expense, and the Employee will perform all acts and sign all instruments of assignment and other papers that the Employer may request relating to applications for patents and copyrights, and to the enforcement and protection thereof.

The term Inventions shall not include any Inventions that the Employee creates on his own time that do not pertain to the subject of the Employment and:

(i)     do not reference the Employer, it employees, clients or agents:

(ii)    do not contain any materials that bear resemblances to or are based upon the Employer, its employees, clients or agents;

(iii)   do not pertain to incidents that actually occurred during the course of or in connection with the Employer's business; and

(iv)     do not contain information relating to the Employer's business or information learned by the Employee in the course of Employment or information related to the Employment,

which items the Employee shall have no obligation to disclose and shall be owned by the Employee.

(b)     Any inventions, improvements, discoveries, software, designs, or writings of the Employee which exist (regardless of the state of completion) on the date of this Agreement, which the Employee desires to exclude from the terms of this Agreement, must be disclosed in writing to the Employer, and their exclusion, if any, from this Agreement must be agreed to by the Employer in writing.

(c)     The Employee represents that the Employee has no inventions, improvements, discoveries, software, designs or writings which were conceived, made or written prior to this date, except for the following, which shall be excluded from this Agreement (if none, please so state and sign here):

_____ none _____

_____

_____

_____

(d)     The Employee agrees that during the Employment and for one year following termination, for any reason, the Employee will provide the Employer, for the Employer's review and approval, at least 15 days prior to submission, a copy of any article or contribution written by or created by the Employee for publication, whether singly or jointly with others, which article or contribution discusses or makes reference to any subject pertaining to the Employer or its business.

5.     Non-Competition.

(a)     Definitions.  The following terms shall have the meanings given them below:

(i)     Competitive Acts shall mean the development, marketing or selling of – or assisting others to develop, market or sell – a product or service which is competitive with the products or services of the Employer (both those existing during the Employment and those which are planned for the future and of which the Employee learns during the Employment), and the solicitation, directly or indirectly, of the Employer's clients or known prospects for the purposes of developing, marketing or selling such products or services, by the Employee (whether as a consultant, analyst, sales person, independent contractor, independent business venturer, partner, member, employee or otherwise).

(ii)     Non-Compete Area shall mean any location within a fifty (50) mile radius of the principal office in which the Employee worked at any time during the one year period prior to the termination of the Employment.   If the Employee's principal office was in Stamford, Connecticut at any time during the one year period prior to the termination of the Employment, then the Non-Compete Area shall be defined as any location within (A) a fifty (50) mile radius of Stamford, Connecticut, and (B) the states of Connecticut, New York and Massachusetts.

(b)     Non-Competition.

(i)     Analyst or Consultant Position.  The Employee agrees that, for a period of one year following the termination of the employment for any reason, the Employee will not engage in any Competitive Acts:  (A) with any client of the Employer with whom the Employer has a business relationship and with whom the Employee maintained contact at any time during the

Page 4

Employment; (B) with any product or service vendor with whom the Employer has a business relationship and with whom the Employee maintained contact at any time during the Employment; (C) with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to the termination of Employment; or (D) within the Non-Compete Area.

(ii) <u>Sales Position</u>. The Employee agrees that for a period of one year following the termination of the Employment for any reason, the Employee will not engage in any Competitive Acts: (A) with the particular office of any client of the Employer with which office the Employee maintained contact at any time during the Employment; (B) with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to the termination of Employment; or (C) within the Non-Compete Area.

(iii) <u>Other Positions</u>. The Employee agrees that, for a period of one year following the termination of the Employment for any reason, the Employee will not: (A) engage in any Competitive Acts; (B) engage in any Competitive Acts with any entity or individual to whom the Employee submitted proposals for specific services on behalf of the Employer within one year prior to the termination of Employment; or (C) engage in any Competitive Acts within the Non-Compete Area.

Any covenant not to compete contained in this section 5 deemed unenforceable by Business and Professions Code section 16600 or California public policy shall be enforceable only outside of the state of California, and Employer agrees that is shall not attempt to enforce this provision outside the state of California while Employee is employed within the state of California.

(c) <u>Other Ventures</u>. During the Employment, without the prior written consent of the Employer, the Employee agrees not to engage or participate in any manner in any business undertaking, except for passive investments in shares of a company listed on a stock exchange, provided that the Employee's holding in any such company does not exceed five percent (5%) of its issued share capital and further provided that such ownership complies with the Employer's Insider Trading Policy, Code of Conduct and Conflict of Interest Policy as the same are in effect from time to time.

(d) <u>Non-Recruitment</u>. During the Employment and for three (3) years following the termination of Employment for any reason, the Employee agrees not to hire, recruit or encourage any person who is then an employee of the Employer to leave the employ of the Employer, whether on the Employee's own behalf or on behalf of any other person or entity.

(e) <u>Tolling</u>. The Employer and the Employee agree that the limitation periods for the restrictions contained herein shall be tolled for the length of time during any period in which any of the restrictions are violated.

6. <u>Policies of the Employer</u>. The Employee acknowledges that, in addition to the policies referenced in this Agreement, the Employer has stated policies regarding various aspects of its business operations and expected employee conduct. The Employer updates these policies from time to time as it deems appropriate and maintains the same on the public network server so that all employees have access to these policies. The policies are currently maintained on "Server Ggcorp_Ct" in the "Corp-Data" folder under "Policies_&_Proc". The Employee agrees to abide by the terms of these policies as the same are in effect from time to time and acknowledges that failure to comply with such policies can result in disciplinary action, including, without limitation, termination of employment.

7. <u>Remedies</u>: (a) The Employee agrees with the Employer that damages are an inadequate remedy to the Employer for any breach of the terms and conditions set forth in this Agreement and that, in the event of a breach or threatened breach of this Agreement, the

Page 5

Employer may, with or without pursuing any remedy for damages, immediately obtain and enforce an injunction prohibiting the Employee from violating any of the terms of this Agreement.

      (b)     The remedies set forth herein are not exclusive and shall be in addition to any other remedy available to the Employer at law or in equity.

      8.    <u>Severability</u>.  The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

      9.    <u>Entire Agreement</u>.  This Agreement contains the entire understanding of the parties with respect to the subject matter set forth herein and supersedes any prior agreements between the parties with respect thereto.  The Employee is not relying upon any statement or representation made which is not embodied in this Agreement.

      10.    <u>Advice</u>.  The Employee acknowledges that (i) the Employee has been given the opportunity to consult with legal counsel for the purposes of reviewing this Agreement, and (ii) the Employee understands the meaning and legal effect of this Agreement.

      11.    <u>Governing Law</u>.  This Agreement and the rights of the parties shall be governed by and construed in accordance with the laws of the state of Connecticut without regard to its conflict of laws principles.  Each of the parties consents in advance to the jurisdiction of the appropriate state or federal courts located within the state of Connecticut.

Agreed and Accepted:

Name: Alia Mendonsa
Date: 1/22/07